CYRILL G. BAUCKE v. J. ADAMS, THE TRAVELERS MUTUAL CASUALTY COMPANY, A CORPORATION, AND THE HAWKEYE CASUALTY COMPANY, A CORPORATION.—188 S. W. (2d) 355.

Kansas City Court of Appeals.  April 30, 1945.

*Paul C. Sprinkle, William F. Knowles* and *Sprinkle & Knowles* for appellants.

*Walter J. Gresham* for respondent.

DEW, J.—The respondent, an attorney at law, brought suit against the appellants to recover attorney's fees claimed to be due him under alleged contract of employment with Agnes Fanning and Beulah Col-

let for the prosecution of their causes of action against appellant J. Adams, for personal injuries, in which causes of action appellants had satisfied a judgment of record in separate suits previously brought by other attorneys. Verdict and judgment against all the appellants were obtained by respondent below in the sum of $2450. The defendants appealed.

For convenience respondent and appellants will be hereinafter referred to as plaintiff and defendants.

Plaintiff's amended petition, in effect, alleged that at the times in question he was a licensed attorney at law; that on September 28, 1940, he was orally employed by Agnes Fanning and Beulah Collett to pursue their claims, by suit or otherwise, against J. Adams for personal injuries sustained September 25, 1940, whereby they agreed to pay the plaintiff fifty per cent of any amount realized on said claims by them; that pursuant to said employment plaintiff thereafter on October 9, 1940, brought suits against said J. Adams for the said two clients, respectively, in the Circuit Court of Jackson County; that thereafter summonses were issued in both cases, advising defendant Adams of plaintiff's said employment, and that defendant was further notified of the terms of the said contract of employment. The petition further alleged that following his employment, and without his knowledge, said two clients aforesaid employed other attorneys, who filed suits for them on said causes of action, respectively, on October 7, 1940, in said Circuit Court. It further alleged that Travelers Mutual Casualty Company had issued its policy, then in effect, indemnifying said Adams; that said company had contracted with the defendant Hawkeye Casualty Company for reinsurance, the effect of which was that said last named insurance company assumed all outstanding claims arising from policies then in force under existing policies of said Travelers Mutual Casualty Company. It was further alleged that said insurance corporations asserted and assumed the rights by privity of contract with defendant Adams and said contracts of insurance and reinsurance, to participate in the defense and settlement of the above mentioned claims and did so participate therein; that throughout defendants had full knowledge of the contract of employment of plaintiff; that for the purpose of defeating and avoiding plaintiff's right to compensation, said three defendants conspired with said Agnes Fanning and Beulah Collett to ''exclude plaintiff from his rights therein,'' and in pursuance of said conspiracy they agreed with said two claimants to settle the said claims against J. Adams, provided they would do so without allowing plaintiff to participate in the transactions or share in the proceeds; that said proposition was agreed to by said two claimants; that pursuant to the conspiracy aforesaid, the three defendants, acting with said two claimants, caused the last mentioned suits to be consolidated for trial, agreed on the amount of judgment, and had judgment entered therein

on or about April 23, 1941, in favor of Anna Fanning for $3400, and in favor of Beulah Collett for $1500, a total judgment of $4900. The petition further alleged that on the same day the three defendants satisfied said judgment by paying the same to said claimants, and in order to make effective the said conspiracy to deprive plaintiff of his fees, the payment was not made in the usual form of draft or check, but paid in cash to the clerk of the court and immediately withdrawn by said claimants, thereby depriving plaintiff of his fees under said employment.

The petition further stated that plaintiff had performed his duties fully under his contract as an attorney, from which employment he had never been discharged; that by reason of the facts alleged, the defendants are indebted to him in the sum of $2450, being fifty per cent of the amount paid by defendants on said claims.

The separate answer of defendant Jesse Adams charges that the plaintiff had based his action on Section 13,337, R. S. Mo., 1939, which provides for an attorney's lien for compensation on a client's cause of action; that suits had been brought by the plaintiff on behalf of Anna Fanning and Beulah Collett, and that suits therefor had likewise been brought by J. K. Owens and James H. Anderson, in the same court, and on identical issues; that after the filing of the respective suits, defendant Adams filed in all of said causes a motion to consolidate or to dismiss; that in said motions this defendant, confronted with a multiplicity of suits on the same subject-matter, moved the court to cause the plaintiffs Fanning and Collett either to consolidate their cases or to dismiss the said causes, or either of them; that on February 1, 1941, the court heard the evidence on said motions and said hearing was attended by the plaintiff Cyril Baucke, plaintiff in the instant case. The answer proceeded to set forth a transcript of the proceedings respecting the motions aforesaid, the substance of which was that the court advised Agnes Fanning that there were pending in said court two cases in which she was plaintiff against said J. Adams, one of which, No. 473,833, had been signed and filed by Cyril Caucke, as her attorney; that there was another case filed in her behalf against the said defendant Adams, No. 474,816, pending in the same court and filed by James H. Anderson as her attorney; that the court stated that the plaintiff Fanning could have but one suit pending in the same cause and on the same matter, and announced that one of her suits would be dismissed; that the court asked her whom she wished to represent her in the matter, whereupon Agnes Fanning replied: "I want Mr. Anderson." The court then inquired: "Then do you desire the suit in which Mr. Baucke is signed as attorney dismissed?" The witness: "Yes, sir."

The answer further sets out the same proceedings respecting the actions of Beulah Collett, wherein the latter stated to the court that she desired Mr. Anderson to represent her, and that she wished the

suit filed in her behalf by Mr. Baucke to be dismissed. Thereupon, the answer alleges, the court said:

"(The Court) Well, let's see. In view of the testimony and the desire of the witnesses I suppose I should dismiss two of the cases and let the other two remain on the docket. That is all that was before the Court?"

The answer of defendant Adams further alleged that the plaintiff herein, Cyril Baucke, appeared and attended said hearing, failed to offer evidence as to his employment by the two claimants who testified; and failed thereafter to appeal from the dismissal of the cases filed by him; that said judge, dismissing said causes, had jurisdiction to inquire into the authority of the respective attorneys to file said action; that said issue was before said court and the decision rendered by him decides and adjudicates any and all rights of the plaintiff Cyril Baucke against this defendant.

The answer of the defendant Adams further alleged that on April 23, 1941, the two cases pending against him, brought by Beulah Collett and Agnes Fanning, not dismissed as aforesaid, came on for trial; that evidence was submitted and the jury returned a verdict in behalf of Beulah Collett against the defendant for $1500, and in behalf of Agnes Fanning against the same defendant in the sum of $3400; that thereafter this defendant paid said judgment into the registry of the court and the attorneys for the plaintiffs thereupon acknowledged full and complete satisfaction of the judgments in the respective causes, all of which appears of record.

The answer of defendant Adams further alleged that the rendition of said judgments, the payment of the amounts thereof into the court registry, the full and complete satisfaction of said judgments on the records of the court, fully and completely extinguished any attorney's lien, if any, existing in behalf of Cyril Baucke, and that Cyril Baucke failed to file any intervening petition in said causes which proceeded to trial.

Defendant Travelers Mutual Casualty Company filed its separate answer in the present case, alleging that any lien the plaintiff may have as a result of filing actions in behalf of Agnes Fanning and Beulah Collett, as set forth in his petition, was extinguished by the dismissal of said cause by the Circuit Court of Jackson County; that said dismissal was occasioned by motion filed by the defendant therein, wherein it was alleged that the lawsuits filed by plaintiff herein were improperly filed and without authority on the part of the individuals named. Further answering, this defendant alleged that the plaintiff herein failed to file a motion for new trial after the dismissal of said causes, and thereby waived and extinguished any rights that he might have had to an attorney's lien in said causes.

Further answering, said defendant alleged the trial of the remaining two cases, the verdict and the payment thereof into the registry

of the court, followed by the acknowledgment and satisfaction of said judgments of record, all of which, it was alleged, extinguished any attorney's lien then existing in behalf. of the plaintiff herein. It further alleged that plaintiff herein failed to file an intervening petition in the causes so tried.

The separate answer of defendant Hawkeye Casualty Company was similar to that filed by the Travelers Mutual Casualty Company.

Evidence introduced by the plaintiff tended to prove that on September 25, 1940, at or near Waverly, Missouri, Beulah Collett and Agnes Fanning were seriously injured in an automobile accident wherein the husband of the latter was killed. They were taken at the time to Benson Hospital, Carrollton, Missouri. The plaintiff attended the funeral of the husband named, and thereafter called on the injured women at said hospital, but not being able to see them, talked with them the following day, at which time, plaintiff testified, they orally directed him to proceed to prosecute their claims against defendant J. Adams for injuries sustained in said collision. The plaintiff was acquainted with the said injured parties, having at the time certain litigation for them pending at Kansas City involving a finance company. At the funeral the mother of the injured women had suggested to the plaintiff that he make the call on them at the hospital. They turned over to the plaintiff some receipts and papers and asked him to look into their case for them. He told them at that time that his terms would be the same as in their case then on appeal against the finance company, to-wit: fifty per cent of the money realized, whether by compromise or otherwise. Thereafter plaintiff began preparation of the case; had pictures taken; went to Waverly; went to the scene of the accident; went to where the claimants' car was; again went to Waverly and to Lee's Summit! called at the State Highway Patrol office; back again to Waverly and interviewed possible witnesses; went to St. Louis; and later called on the defendant Adams at the stockyards in Kansas City, and served him with notice of attorney's lien, traveling approximately 5,000 miles in the plaintiff's car in connection with the case. The notice of lien served on defendant Adams, notified him of plaintiff's employment by the parties named to represent them in their claims for personal injuries sustained in the accident described in the petition, and set forth the terms of said employment as aforesaid.

Plaintiff's evidence further tended to show that on October 4th, he located the truck belonging to defendant Adams involved in the accident, which was at Bates City, where he went and took pictures of the truck, and went back to Waverly, and from there on to Carrollton to see the claimants again at the hospital. He again met the parents of the young women. Later that week he spent a day or two at Waverly and consulted an osteopath or chiropractor regarding the condition of the young women, and again went to Waverly in search of

witnesses. He made several trips to Lee's Summit and obtained an engineer at Waverly, who made pictures and plats of the highway and, altogether made about ten trips to Carrollton, and one trip to Chillicothe. Thereafter the plaintiff filed suit for the young women in the Circuit Court of Jackson County, Missouri, at Kansas City, on October 9, 1940, causes Nos. 473,832 and 473,833.

A few days thereafter plaintiff learned that suits had been filed in the Independence Division of said Circuit Court for the same young women on the same causes of action prior to the ones filed by plaintiff. Thereupon plaintiff went back to Carrollton to see the young women and, after talking with them, returned to Kansas City and prepared statements, which he took back to Carrollton on the following Sunday for their signatures; that after several changes suggested by the young women, they signed the same. The statements referred to were sworn to by the injured women before a notary public at the hospital in Carrollton, presumably on the same date they were signed. The notary testified that the women were both confined at the time to their beds, and they appeared to be "sane;" that he spent twenty or thirty minutes there talking to them about the affidavits which Mr. Baucke had prepared. The affidavits of the two women were similar and, in effect, stated that on September 28, 1940, they had employed the plaintiff to proceed and protect their rights and to recover the damages sustained in the accident, and stated that the lawsuits filed by him in their behalf were lawfully instituted "without argument on my part." The affidavits further stated that after the employment of the plaintiff, one J. K. Owens came to the hospital and suggested that they employ James H. Anderson, and told them that before instituting any cause of action on such claims the said Owens and Anderson would consult with plaintiff. Each affidavit contained the statement: "I am of the opinion that Mr. Baucke will handle my claim satisfactory and I have no dispute with him as to his ability and his fee is to be fifty per cent of the amount realized on said claims paid in any manner." The affidavits purported to show that they were signed and acknowledged on October 13, 1940.

Later, motions were filed in the causes filed by plaintiff, to dismiss or to consolidate them. The two cases first filed were transferred on change of venue from the Independence Division to Kansas City, taking the numbers 474,815 and 474,816.

The plaintiff testied that he was present on February 1, 1941, when the two cases filed by him were dismissed by the court on the motions referred to and objected on account of his employment; that he learned that the other two cases, filed by the other attorneys, were set for trial in April, 1941.

Upon learning that the cases filed by the other attorneys were called for trial and in the same division, Division 2, where the motions had been sustained dismissing his cases, plaintiff went to the court house

and to Judge Cook's division and there talked with defendant Adams and also with an attorney representing one of the present corporate defendants, and told them that he expected to be protected for his work and employment on his cases, and again served notice of attorney's lien on Mr. Adams at the trial; that the plaintiff then remained in attendance at the trial for about two hours and, before leaving, again talked with the attorney for one of the corporate defendants herein. The latter attorney had told the plaintiff the night before that it was thought the case would be settled, and told the plaintiff that if the plaintiff would serve notice on the clerk of his lien that, if the money was paid in, the attorney thought that plaintiff would be protected; that when plaintiff came that mornnig to the trial, the attorney told plaintiff that there would not be any settlement, that plaintiff could leave, and that the case would go to the jury. Plaintiff testified that the attorney with whom he had the above conversation said he would notify plaintiff if any settlement was made. Thereafter, the plaintiff learned that a settlement was later made, and he went immediately to the office of the circuit clerk, and he found that the cases had been settled at the noon hour, and that payment had already been made, and in cash, and in turn paid to the attorneys for the plaintiffs therein. The plaintiff was told by the attorneys for defendants that they had agreed on an instructed verdict, $1500 in the Collett case, and $3400 in the Fanning case.

In order to show that the same attorney representing the corporate defendants in the case at bar had represented the same corporations since the date of the accident, in the matter of the personal injury claims mentioned, an instrument was introduced in the present case, dated September 27, 1940, which was witnessed in writing, by the attorney who tried the present case, purporting to be a release of the Fanning claim for $450, and pleaded in the answer to the Fanning suit filed by Baucke.

On cross-examination the plaintiff admitted that he was in Judge Cook's division on February 1, 1941, when the motions to dismiss his cases were taken up by the court; that he came without subpoena and in response to notice given to him; that he saw Agnes Fanning take the stand and heard her testify, and heard Judge Cook state to Mrs. Fanning that she had two suits pending against the defendant Adams for the same cause of action, and that only one suit could be allowed to remain, and heard the court ask her whom she wished to represent her in the matter, to which she answered: "Mr. Anderson;" that he heard the court ask: "Then, do you desire the suit in which Mr. Baucke is signed as attorney dismissed?", and her answer, "Yes, sir." He said he heard the Court say: "All right, now you gentlemen may question her if you wish." Plaintiff admitted that he questioned said witness at the time as follows:

"Q. (By Mr. Baucke) I have one question. Any procedure that I have taken, or institution of any suit at the time, at those times I was authorized to do, wasn't I, Miss Fanning?

"A. I told you when you came there that I wasn't able to talk about it and to wait until I got out of the hospital the first time you were there."

He testified that he remembered other counsel then asking Mrs. Fanning if she had a contract with or had ever employed plaintiff to represent her in the case, to which she answered: "No, sir;" that he heard counsel ask her if at the time he first talked to her prior to the time the suit was filed by Mr. Anderson, if she did not tell him that she did not want anything done until she got to feeling better, to which he heard her answer: "I told him until I got out of the hospital, I didn't want anything done, didn't want to talk about it."

He admitted hearing the court address Beulah Collett in reference to her suit No. 473,382, filed by plaintiff, and heard the court tell her that she had another suit pending filed by James Anderson, both for the same cause of action, and that she could have only one suit pending, and was then asked by the court which lawyer she wished to represent her and her answer was: "Mr. Anderson." He heard the court say: "Then do you wish to dismiss the suit in which Mr. Baucke is signed as attorney? A. Yes, sir. Q. (The Court) All right." It was admitted that the court thereupon stated: "Well, the Court will dismiss Cause No. 473,832, Beulah Collett v. J. Adams, and No. 473,833, Agnes Fanning v. J. Adams, and will leave the others on the docket."

Plaintiff was asked if he took the stand at the hearing of the motions to dismiss, or told the court that he had an oral contract with the claimants, and he said he did not take the stand. Upon being asked why he did not do so, objection was made by his counsel and the same was sustained.

Plaintiff stated that on October 13th, he took the affidavits heretofore mentioned to the ladies at the hospital; that the affidavits contained the substance of their own statements given him the day before; that he had prepared the statements in typewritten form at his office, and he had intended to file them in the cases because the motions to dismiss were coming up, and not having a written contract with the ladies he thought he should have the affidavits because one of the attorneys filing the other cases had called him by 'phone and inquired if he had a written contract or an oral contract. He said he did not consider the dismissal of his actions in court as a cancellation of his contract with the claimants and felt that he had never been discharged.

One of the counsel for the defendants called as a witness in behalf of the plaintiff testified that he called on the two ladies three or four days after the accident; that he thought they were then of sound mind.

A certified copy of the record of the State Superintendent of Insurance was introduced in evidence, showing the assumption by the

Hawkeye Casualty Company of policy liabilities of the Travelers Mutual Casualty Company.

An attorney who lived in Cillicothe at the time of the accident testified in behalf of the plaintiff that he had been acquainted with Richard Fanning, who was killed in the accident in question, and went to call on the injured women with a sister of the deceased a few days after the accident; that Beulah Collett and Agnes Fanning told him that they had employed an attorney, Mr. Baucke. On cross-examination, he said that Mr. Fanning's sister had guaranteed the funeral expenses, and that with her he went to see if some arrangements could be made with the widow, Mrs. Agnes Fanning, to contribute or help on the expenses. He stated that it was not his purpose to obtain employment from the injured women, but to protect the sister of the deceased, Mr. Fanning. He testified further that the women told him "that they had employed Mr. Baucke, but that their employer, the gentleman they worked for, who ran a night club here in Kansas City, had been down there that day with some lawyer from Kansas City and he wanted this other firm of lawyers to split the fee with Mr. Baucke," that the names of the other two lawyers were Mr. Anderson and Mr. Owens; that the name of the employer of the ladies was an Italian name, which he did not remember.

Plaintiff, being recalled to the stand, testified further that at the time that he was at the hospital the claimants gave him certain receipts received from the hospital for charges paid on account; that the suits filed by Mr. Anderson and Mr. Owens were filed on October 7th, and the suits filed by plaintiff were filed on October 9th; that he did not notice any mention of the cases filed by Mr. Anderson and Mr. Owens in The Daily Record, a legal publication in Kansas City which publishes news of court proceedings in the local courts. He stated that the reason he filed the cases on the day he did was on account of Mr. Anderson's calling him over the 'phone.

On behalf of the defendants, Agnes (Fanning) Cerletti testified in the present case that at no time did she, orally or otherwise, employ the plaintiff to file any lawsuit for her; that she did not employ him to investigate the accident or do anything in connection with it; that he called upon her and her sister at the hospital within about three days after the accident; that she did not recall much about it except that he came with her father and mother "because he couldn't get in without they brought him in with them;" that he did not know her mother before the accident and introduced himself to them at the funeral; that her mother had never been in the plaintiff's office; that the only litigation she ever employed plaintiff in was in the matter pending with the local finance company over insurance covering a car that she and her sister had owned and which had been wrecked; that the car was in her sister's name, and that Mr. Baucke had recovered $520 in the case, which he was still holding; that he had taken that

case on a one-third basis of what he could recover; that her sister was now in New York and had remarried since the accident; that at the present time Mr. Baucke was holding two-thirds of $520 belonging to her and her sister; that she and her sister were in the hospital about three months after the accident; that they employed Mr. Owens and Mr. Anderson to bring suits for them, making written contracts with them to cover said employment; that after they talked with Mr. Owens, they found that Mr. Baucke was claiming to have been employed by witness and her sister; that she found this out some three weeks after the accident; that Mr. Baucke then came to the hospital with some papers for them to sign, and said that it was necessary for him to get those statements to keep from being "thrown out of the bar association;" that witness had one arm and one leg broken in the accident; that when Mr. Baucke first called on them she remembered very little what was said or done on that first visit; that Mr. Baucke came later in the week and "brought something" about a lawsuit; that at that time witness was in a critical condition, full of morphine, and told him that she did not wish to talk about it; that she would talk to him later; that Baucke came again in a week or so and produced the affidavits mentioned, saying that he had already brought suit; that after that Mr. Anderson and Mr. Owens came to the hospital, when witness was beginning to come to herself, and talked about the matter, at which time she told them that she was not able to talk about it on that day, and asked them to come back a week later; that later when they returned, she signed the contract with Anderson and Owens. Witness testified that at the time Owens and Anderson first came to the hospital they came with Mike Fanning, brother of witness's deceased husband; that on being asked to come back later, they left and returned in about a week and brought with them a Mr. Manzella, who was a friend of Mike Fanning, surviving brother of the deceased. It was on that occasion that witness employed Mr. Anderson and Mr. Owens to file suit for her.

Witness Mrs. (Fanning) Cerletti testified further that she was later subpoenaed to appear in Judge Cook's court room on the matter of the motions to dismiss, and that she appeared and gave her testimony; that she testified there that she had not employed Mr. Baucke at any time; that she did not want him as her lawyer; that the cases were then dismissed; that she had since had to pay costs in her case that was dismissed on account of its effect on real estate owned by her. Witness testified that the said Manzella, who accompanied Anderson and Owens to the hospital at the time she signed contracts for Anderson and Owens to represent her in the matter in question, was her employer. On cross-examination she admitted that she had made no claim in the case against the finance company in which Baucke represented her sister and herself because the car was in her sister's name, and that Mr. Baucke had had all of his transactions regarding

that matter with her sister, although, she said, he knew that the witness owned a one-half interest in the car. She stated that after the accident in question it was about a week, or a week and a half, or two weeks before she could remember very much; that she did not remember counsel for the defendants herein calling on her; that she first remembered Mr. Baucke calling on her about a week, or a week and a half after the accident, but she was not then able to talk with him much; that she remembered someone calling on her from Chillicothe, who stated that he was a notary public; that Mr. Baucke, who was present, told her to sign and swear to her signature on the papers in order to prevent him from being "thrown out of the bar association" for bringing a suit without authority; that witness wanted Baucke and the notary to get out of the room and wanted them to leave, and she signed the papers because plaintiff said it was to keep him from being "thrown out of the bar association;" that she did not read the instrument, but made her mark on the same because she was provoked at his being there. She admitted that there is nothing in the affidavit showing that the purpose of it was to prevent Mr. Baucke from being "thrown out of the bar association," but said that she had not read it when she signed it. She denied giving Mr. Baucke any telephone numbers, and denied her sister at the time gave him any telephone numbers, her sister being then unable to talk except in a mumble, and suffering at the time from a brain concussion. She stated that at the time of the accident she and her sister were employed at the Jungle Club, which was a night club located in Kansas City, and that they were waitresses at that establishment. She stated further that while in the hospital she and her sister received a lot of mail, and remembered receiving some pictures that Mr. Baucke claimed he had taken of the car that had been wrecked. She acknowledged receiving such a letter dated October 7th. She did not recognize the copy of a letter from plaintiff dated October 8th. She did, however, admit having received a letter from the plaintiff dated October 9th, and said that was when she found out that he had brought a suit. The letters mentioned were introduced in evidence. She said that Mr. Baucke told her he had taken pictures of her in bed at the hospital. She said that on the day that she signed the affidavits, Mr. Baucke was "crying and begging and pleading that day, and he was so persistent that to get him out of the room I would have signed anything;" that she would sign anything to keep anybody from being thrown out of the bar association, if it was that bad.

On re-direct examination, witness Agnes (Fanning) Cerletti said that she had nothing to do with the preparation of the affidavits, and did not recall any conversation with Baucke previously in regard to their contents, later presented to her in typewritten form; that at the time she made her mark on the affidavits she was very sick, and both arms were in casts, and she also was suffering from a broken leg, which

was likewise in a cast; that at the time her sister was partially paralyzed from a brain concussion, and had sustained a fractured jaw in the accident. She stated that Mr. Baucke had since told her that if she would be a witness for him in the present case, he would relinquish the money now in his hands, recovered in the former suit with the finance company in which he represented her; that this conversation was in 1942, after she had obtained a judgment in her case; that she told him that she would not be a witness for him if she never got the money because it was not true; that she and her sister had gone to other counsel in regard to their former litigation with the finance company, and that Mr. Baucke had stated in the other attorney's office that if she would testify that she authorized him to bring the suits in question, that he would release the money in his hands; that up to date she had never received her part of the funds in Mr. Baucke's hands. Witness explained that her mother had found the hospital receipts under the witness's pillow and, not knowing what they were, handed them to Mr. Baucke; that the occaion was the Sunday following the accident when witness didn't know much about what was going on; that she had not seen the receipts until shown to her on the stand; that she had later asked Mr. Baucke for them, and he said that he wanted to hold them.

J. K. Owens, one of the attorneys who filed the suits in which judgments were obtained and satisfied, as above stated, testified that he was a lawyer in Kansas City, Missouri; had practiced twenty-two years and was associated with James H. Anderson; that Mike Fanning, brother-in-law of one of the claimants, came to their office to find out if he could recover damages for the death of his brother, and was told that he could not recover, but that the widow would have that right, whereupon Mr. Fanning asked Mr. Anderson to go and see the girls at the hospital; that on the Sunday following the accident he and Anderson and Mike Fanning went to see the women at the hospital and found them in such serious condition that the witness simply asked them if they had employed anyone, and the Collett girl had said that she had not, whereupon the witness told them that they were in no position to talk business, and advised them to wait and not sign up with anyone until they were able to talk. Witness testified that he had represented Tommy Manzella, owner of the Jungle Club, and operator of the American Cab Company, and that during the following week, Manzella called on him and told him the girls had been injured; that they had been asking for him (Manzella), and that some lawyers were there and wanted to represent them; that witness told Manzella that he had already been to see the girls with Mr. Fanning, whereupon Manzella said that he was going down the following Sunday, and asked the witness to go with him; that on the following Sunday, witness and Manzella drove to Carrollton and saw the girls again, at which time witness told them that he would appreciate

contracts, that they had a good lawsuit and some bad injuries; that the women then signed the contracts, and witness asked them if they had hired anyone else, and they said they had not, but named several lawyers that had been down to see them, among whom was the plaintiff Baucke. He said the sisters told him that their sister-in-law had been to see them with another lawyer, but that the sister-in-law was not favorable to them, and they did not want the sister-in-law to have anything to do with the possible proceeds of any lawsuit; that upon returning to Kansas City, witness prepared petitions for the claimants and filed them on October 7th; that at that time he had no knowledge that Mr. Baucke claimed to be employed by the women, and did not learn that he made such claim until someone representing the defendant advised witness that suits had later been filed by plaintiff Baucke three or four days after witness had filed suits.

When asked about the method of settlement of the cases tried, witness Owens testified that he knew that the Travelers Mutual Casualty Company was in financial difficulties and he understood that the company was then under suspension, and he told the defendants that before any settlement could be made that it would have to be in cash; that he did not want any check coming back from that company; that that company's assets were taken over by another company about that time; that after he filed his suits, the defendant therein filed a motion to consolidate the two cases, whereupon he talked to one of the attorneys for the defendant and told him that he had a contract with the claimants, that he and James Anderson represented them and suggested that the defendant file a motion to dismiss the cases, or consolidate them "so we will know who represents these girls in these cases," which was done; that the motion came up before Judge Cook for hearing, at which time Mr. Baucke was present and, after the hearing, the court ruled that the suits filed by him and Mr. Anderson should proceed, and dismissed the cases that Baucke had filed, and from that time on witness considered Baucke to have no interest in the lawsuits. Asked if at the time of the dismissal of Baucke's cases witness felt that Baucke had any further interest in the claims, he answered that after Judge Cook dismissed the cases, Baucke did nothing more toward representing the claimants; that Baucke did not furnish to the witness any information, pictures or other data obtained by Baucke in the latter's investigation; that witness suggested the motions and welcomed the opportunity for a determination as to who had the specific contract for the cases because he did not wish to enter into a lawsuit if there was another contract outstanding, and make the claimants pay two different sets of fees on two contracts.

On cross-examination, witness Owens stated he knew that if a check for settlement came back, the case, if tried over again, could not be reached until the fall term; that when the settlement was reached, the parties had the court instruct the jury to bring in a verdict in that

sum; that the money was received by him before the judgment was rendered, and that judgment was thereafter entered; that it was all done about the same time, during the noon hour in the office of the clerk of the court; that he did not think that the money was ever actually in the hands of the clerk; that when it was paid to witness and Mr. Anderson, they went to the third floor and, he believed the judgments were there satisfied.

On re-direct examination, witness Owens testified that he considered the liability uncertain under the conditions surrounding the accident; that they would be unable to collect from the owner of the truck, and that he felt that the settlement was a good one. He said that Mr. Baucke never talked to him about the case.

The transcript of the proceeding before Judge Cook on the motions to dismiss and consolidate was identified by the court reporter and introduced. The same in substantially as hereinabove set forth.

On behalf of defendant, witness James H. Anderson testified that he is a practicing attorney in Kansas City, Missouri; that he heard about the accident in question the following morning; that he was well acquainted with Richard Fanning, who was killed in the accident in question, and on the evening before the occurrence he had been with said Fanning and several others at a social gathering; that Fanning had indicated that he was going the next day to the home of his mother-in-law to meet his wife; that the witness was informed of the accident the next day, and that Richard Fanning had been killed; that Mike Fanning, the brother of the deceased, called on him that afternoon; that Mike Fanning had for a long time been a client of the witness; that Mike Fanning inquired if he had a cause of action against the truck line company for his brother's death, and witness informed him that he would not have; that the next day witness again met Mike Fanning, who suggested that they go and see his sister-in-law at the hospital at Carrollton; that the following Sunday witness and Mr. Owens went with Mr. Fanning to see the injured women; that he found them in no condition to talk business; that one of the women had her leg in a cast; her head bandaged, her eyes black, and one of her arms strapped, and adhesive tape around her breasts, and the other woman had her head swathed in bandages, apparently in a coma. He stated that they left there and some time the following week Tommy Manzella and Owens went back to Carrollton and interviewed the women; that when Mr. Owens returned he had a contract with the claimants and he and Mr. Owens then filed lawsuits for them; that he learned afterwards that Mr. Baucke later filed lawsuits for the same claimants; that Mr. Baucke called him and said he represented the claimants and witness said "Do you have a contract?", and he said, "Well, I am employed." Witness stated that he, Baucke, did not tell him whether he had a contract or not. Witness stated that one of the attorneys representing the defendant in the personal

injury cases came to witness's office with a motion to consolidate the cases, and that witness said to him that "this is not the way to do these things. Why don't you file a motion, asking the court to decide who has the contract in this case and who shall proceed in this case?"; that the attorney took the motion back and never filed it, but that there was a motion to dismiss, to decide which one of the cases was to stay on the docket; this motion was heard before Judge Cook in Division 2; he and Mr. Owens appeared at the hearing of the motion; Mr. Baucke was present and did not take the stand; that the two women testified, and Mr. Baucke asked them some questions regarding whether or not he had been employed by them; that thereafter Judge Cook dismissed Mr. Baucke's two cases.

As to the manner in which the settlement was made at the trial, the witness Anderson said that he and Mr. Owens went back into conference on the question of settlement with the attorney for the defendant and reached an agreement, whereupon the witness went into the court room and advised Judge Cook to that effect, and then the attorney for the defendant had releases prepared and the attorney for the defendant asked about entering the judgment and having the court instruct the jury to return a verdict, and witness said he had no objection to that, and it was so done. He stated that at the time of the conference and at different times, the attorneys for the defendant had advised him about the precarious financial straits of the Travelers Mutual Casualty Company, and told the witness that they would like to have the judgment entered, as described, and later in the court room Owens demanded that the payment be made in cash, rather than in a manner that would have to be later approved by the home office of the insurance company or companies, by which time, if approved, the company issuing the check might be "broke;" it was then agreed that the money would be paid in cash.

There were introduced in evidence the records of the motions in the two cases filed by plaintiff, each reading, respectively: "Now on this day comes defendant by attorney and files motion to consolidate or to dismiss this cause of action herein," both of which, respectively, were shown by the record to have been sustained, and the causes dismissed. Defendants also introduced the judgment record in the cases tried, referring to the agreement as to account, the verdicts, as aforesaid, and the judgments entered in accordance therewith. The judgment record further shown that the defendant was ordered to pay said judgments to the clerk of the court; recited that the defendant had so paid the same, in cash to said clerk, together with the costs, whereupon, the entry read, it was ordered that each of said judgments against the defendant "be shown as fully satisfied and finally discharged."

The deposition of Beulah (Collett) Milgrove was introduced in the present case, she then being in New York. She testified, in substance,

that she did not authorize plaintiff to file an action for her for her personal injuries growing out of the action described, either by oral or written contract; that he did not have any authority to file the action that he did file; that she had testified to the same effect at the hearing on the motion to dismiss the case that Mr. Baucke filed; that she never told Mr. Baucke after he filed the suit that he had authority to do so; that she understood the purpose of the hearing on the motion was to dismiss Mr. Baucke as her attorney, and the cases he had filed, because he had no authority to file them; that she appeared at the hearing of the motion to dismiss in answer to a subpoena; that she was unconscious when Mr. Baucke first called at the hospital; that she gave him no hospital receipts, and did not know how he obtained them; that she had been told that her mother was there on that day and might have given them to him; that she was unconscious seven or eight days; that she did not recall any settlement of her case with the insurance company for $150; that she remembered that on October 13, 1940, Mr. Baucke called on her and brought an affidavit, which he asked her to sign to keep him from being ''thrown out of the bar association;'' that he obtained a notary public and told the notary that the affidavits were for that same purpose; that at that time Baucke was representing her in another matter; that she knew he had taken a kodak picture of the car and sent her a copy of it; that she did not recall receiving a copy of the petition filed by plaintiff; that when she signed the affidavit at the hospital she was hardly in her right mind; that she then had an abscessed jaw and the doctor was going to operate on it that day; that she wanted Baucke to leave; that he was crying; that he urged her to sign it to keep him from being ''thrown out of the bar association;'' that she signed the affidavit but did not read it; that he read it to her; that she remembered only one letter from plaintiff and in that he asked how she was getting along, and said that he was coming down to see them soon.

In behalf of defendants, R. C. Tucker testified that he was a practicing attorney in Kansas City; that he recalled that he represented the Hawkeye Casualty Company some two years prior in the two lawsuits brought against J. Adams by Agnes Fanning and Beulah Collett; that there were two sets of lawsuits filed; that after the two sets of cases were filed, he filed a motion on behalf of defendant to dismiss; that he himself did not handle the motions thereafter; that he was advised that Mr. Baucke's cases were dismissed; that the trial was started later in the other two cases in the same division of the court; that during the trial there were negotiations for settlement; that the record of the judgments and settlement accorded with his recollection as to what occurred; that at the time of the trial he told Mr. Baucke the day before the judgments were entered ''that the case was about to be disposed of by settlement, and that for the protection of all parties that he would see there was put in the court

order a requirement that we deposit the money with the clerk of the court and he would have to then protect his own rights;'' that such requirement was incorpoarted in the court order.

On cross-examination the witness Tucker stated that he did not pay out any money until there was a court order made. The witness was asked if it was his intention to pay the money into court and give Baucke a chance to assert any lien he might have. His answer was that it was his purpose to comply with the order of the court in the settlement to pay the money to the clerk for ''our protection'' and therefore if anybody had any claim to it it could be litigated with the clerk, not with the defendant therein. He testified that the only conversation that he had with Mr. Baucke was the day before the judgments were entered when he told him that the case was to be settled, and that the money was going to be paid to the clerk; that he did not recall any later conversations with him; that when he had that conversation he knew that the settlement was about to be made; that the amount had been discussed and was about to be agreed upon; that he did not recall having any conversation with Mr. Baucke between the time the amount was agreed upon and the time when the money was paid into the court and judgment entered; that he was trying to protect his clients from any further responsibility under the attorneys' lien statute of Missouri by complying entirely with the order of the court.

Plaintiff testified in rebuttal that he had written three letters to the claimants, copies of which were introduced; in the letter of October 5th, he reported on his investigation of the cases to date; the letter of October 9th, which purports to advise the women that copies of petitions were enclosed therein as filed by him, and he warned them therein against the importunities of other attorneys, seeking to represent them, and he reported information coming to him that the insurance companies representing the insured were seeking to cause conflict and to effect a compromise at a lower amount than the women were entitled to receive; and in the letter of October 14th, he told the claimants of the motion to dismiss the cases filed by him; that the motions had been set for hearing but the attorneys in the other cases and for the insurance company had not appeared, and that at his suggestion the judge had agreed to hold the motions indefinitely until the women might appear therein; he stated in his last letter his tentative plan to have the other attorneys restrained and do everything to protect the women from having to pay two sets of lawyers. Plaintiff testified that the women admitted to him that they had received the letters which he said had been mailed in the regular manner.

The plaintiff being again recalled in rebuttal, denied the shedding of tears at the meeting with the claimants in the Carrollton hospital; explained that he was withholding $500 collected by him in the other

litigation for the same parties, and stated that if claimants owed him fees in the personal injury cases and he should turn it over to them, he would have to sue to get his interest back again; that under the law he had a right to attach any money or belongings of the parties; that as to what Mr. Tucker told him about the probable settlement of the case, and suggesting that witness take steps to protect himself, witness stated that Mr. Tucker later told him he did not think the case would be settled, and that witness could go back to his office and Mr. Tucker would let him know.

. Defendants' first point of error herein is that the court erred in overruling the separate demurrers offered at the close of plaintiff's evidence. Defendants having proceeded thereafter to offer evidence in their behalf on the merits, they are now in no position to complain of the ruling on their separate demurrers offered at the close of plaintiff's case. [Porter v. Equitable Life Assur. Soc. of U. S., 71 S. W. (2d) 766.]

The same ruling applied to the appellants' a similar Points III and V, made separately in behalf of the corporate defendants, respectively. Appellants' Points II, IV and VI can be considered together. Error is claimed therein by the overruling of the separate demurrers at the close of all the evidence, on the ground that plaintiff's suit was based on the theory of conspiracy, but not proved; that the proof was that (1) plaintiff's clients settled their suits without his consent, which was lawful; that (2) the proof as to defendant Travelers Mutual Casualty Company was that it did not engage in any act which would constitute conspiracy, but that it was only an insurer for an automobile owner; that the money paid was to satisfy judgments wherein plaintiff's alleged clients had, through other counsel, settled their lawsuits, which acts were lawful, and did not eliminate any remedy of the plaintiff for his alleged lien for services; and (3) no unlawful act was shown on the part of the defendant Hawkeye Casualty Company, which did not participate in any litigation referred to in plaintiff's petition, but was liable only as guarantor of the policies of the Travelers Mutual Casualty Company.

The term ''conspiracy'' in civil actions mean an agreement to do an unlawful act, or do a lawful act in an unlawful manner. There can be no independent tort of ''conspiracy,'' except in such an unusual case where the mere force of numbers, acting in unison, makes a wrong, of which exceptional circumstances there is no evidence in this case. [Shaltupsky v. Brown Shoe Company, 350 Mo. 831, 168 S. W. (2d) 1083.]

The gist of a civil action for conspiracy is not the conspiracy, but the damage inflicted in pursuance of the conspiracy. [Shaltupsky v. Brown Shoe Company, supra; Darrow v. Briggs, 261 Mo. 244. 169. S. W. 118.] We said in Dano. v. Sharpe, 236 Mo. App. 113, 152 S. W. (2d) 693, 695:

"A conspiracy cannot be made the subject of a civil action unless something is done, which, without the conspiracy, would give rise to a right of action. To maintain an action for damages something in pursuance of the conspiracy must have been done, occasioning injury from which the damages have' proximately resulted (citations.)"

The only purpose served by conspiracy established in a tort case is to make the defendants liable for the acts of each other by showing their joint and combined purpose and efforts to accomplish the thing complained of. Jackson v. Scott County Milling Company, 118 S. W. (2d) 1054, and authorities therein cited. There is no departure, however, when the proof fails to show conspiracy, but shows actionable conduct on the part of one or more of the defendants. In such a case recovery may be had against such defendants as to whom the alleged actionable conduct is established. Thus the failure of the plaintiff to prove conspiracy would not alone be ground for a demurrer filed by a defendant at the close of the case, if actionable conduct as to such defendant be properly proven.

As to whether or not the failure to establish conspiracy in this case had the effect of exonerating any of the defendants from the liability charged, depends on the nature of the conduct of each complained of, and of the circumstances in evidence. It must be borne in mind that for conspiracy to exist, the acts alleged to have been agreed upon must be unlawful, either in their nature and purpose, or in the manner of their performance.

Certainly no unlawful act can be charged to' defendant Adams by being twice sued in the same court on the same causes of action by, the same plaintiffs. There is no evidence that he in any manner invited either set of cases. That being true, as to him, likewise it would be true as to the defendant insurance companies as to which there is no evidence that they participated in the institution of any of the suits.

The defendant Adams, finding himself twice sued on the same causes of action by each of two claimants, had the right, under the law, to a determination as to which action of each claimant he should defend. The law abhors a multiplicity of suits. To that end, the statute provides as one ground for a demurrer to a petition, that there is another action pending between the same parties, for the same cause, in this state. Section 922, Revised Statutes of Missouri, 1939. The defendant Adams could not have availed himself of a demurrer, because the petitions filed by Baucke did not show on their face the pending actions previously filed by the other attorneys. Defendant Adams then had the right either to make that plea in his answer to Baucke's petitions or by motion filed therein. In order that he might have a determination of that point before having to plead and defend in both cases, and in accordance with the purpose and object of the

policy of the law to prevent a multiplicity of suits, the defendant could properly, an did, ask by a motion for immediate determination of the rights of the two sets of causes of action to coexist. There was nothing unlawful, therefore, in that act of defendant Adams, nor in the manner of his performance thereof. Even assuming that the defendant insurance company advised or participated in the filing of Adam's motion to consolidate the cases of the two plaintiffs and to dismiss one or the other set of said cases, such participation by the defendant insurance companies could not constitute "conspiracy," because there was nothing unlawful in the filing of such motion by the defendant Adams.

Upon the filing of such a motion, asking the court to dismiss one set of said cases, it is generally the duty of the court, without further proof than the pendency thereof, to dismiss the suit or suits last filed.

In Doebbling v. Quimby, 221 Mo. App. 1178, 299 S. W. 629, we said:

"Defendants insist, and we think properly, that plaintiff is not entitled to recover, for the further reason that he had two actions pending for the same relief. This being true, the first action must prevail, and the latter be abated."

The court in that case further pointed out that under Section 926, Revised Statutes of Missouri, 1939, when any of the matters enumerated in the said first section do not appear upon the face of the petition, objection may be taken by the answer, and if no such objection be taken, the same will be considered waived except only the matter of jurisdiction over the subject-matter and insufficiency of the petition to state a cause of action.

However, the court in the Fanning and Collett cases, with which we are concerned, permitted a hearing on the question of the authority of respective counsel to file the suits involved. Plaintiff had been served with copies of the motion and notice of the hearing thereof, attended the same an participated therein. There is also evidence that the plaintiff had delayed the hearing on the motion to dismiss until the plaintiffs in the causes of action then pending could appear and testify therein. Upon the hearing, plaintiff's alleged clients denied the making of any oral contract, or the giving of any other authority to Baucke to file the suits filed by him, and he interrogated them on the specific question of his authority to represent them in the filing of the subsequent suits, and they reaffirmed their statements that they had entered into no contracts with him therefor, nor had given him any authority to bring actions. Plaintiff did not take the stand to prove the contrary, nor did he introduce any evidence at the time to that effect. Upon such hearing the court dismissed the two actions filed by Baucke. It cannot be said that any of the defendants were guilty of any unlawful acts, or the unlawful performance of any lawful act. in the proceedings wherein the two actions filed by plaintiff were dismissed by the court.

Weeks later, when the first cases filed and which were not dismissed by the court, came on for trial, and without the plaintiff having filed anything further in the cases or having taken any other steps to protect his interest, if any, he appeared at the trial thereof and attended the same for over two hours. On that occasion he did nothing but serve again on defendant Adams a claim of attorney's lien. It is admitted by the plaintiff that he was warned by one of counsel representing defendant in the causes then on trial that a settlement of the cases was under consideration and probable. The evidence is conflicting as to further conversations with such counsel as to whether the settlement would be effected, but the fact remains that the plaintiff did not remain in attendance at the trial of the case on the following day when, during the noon recess, the cases were settled. The evidence is that it was doubtful that any judgment for the plaintiffs in those cases could be collected from defendant Adams; that the financial condition of the defendant Travelers Mutual Casualty Company was precarious, and that the liability of the Hawkeye Casualty Company, defendant herein, depended on some voluminous contract of reinsurance, and that the attorneys for the plaintiffs in the cases then on trial demanded settlement in cash rather than by draft or check, which might have to be approved and cleared at the home office of the defendant insurance company or companies; that the attorneys for the defendants then demanded that under such conditions judgments would have to be entered and shown satisfied; that thereupon the court, at the request of counsel, gave to the jury an instruction to render verdicts for the agreed amounts, which was done, whereupon judgments were rendered, requiring cash to be paid to the clerk of the court in satisfaction of same. The records were so made and the money paid. We find no unlawful act on the part of any of the present defendants, in the proceeding on the trial of said personal injury cases and the disposition of the same as described, nor do we find the manner of the performance of any of such acts was unlawful. Thus there could be no conspiracy on the part of any of the defendants in the premises.

For the same reasons, that the conspiracy was not proven as to any of the defendant, it is evident that the gist of the action was not established as to any defendant, to-wit, the unlawful defeat or deforcement of plaintiff's attorney's lien, if any, or the unlawful defrauding him of his rights thereunder.

The law is, as it should be, zealous in the protection of an attorney respecting his compensation for services rendered. Such is the purpose of the statutory provisions therefor: Sections 13,337 and 13,338, Revised Statutes Missouri, 1939. When, however, an attorney seeks to establish his lien and to exact the penalty from others for alleged deforcement of such lien or for defrauding him thereof, it is his burden, not only to prove his authorized employment, but that the

acts and conduct of the parties whom he seeks to hold liable were in violation of his rights and wrongfully defrauded him thereof. [Walsh v. Walsh, 285 Mo. l. c. 205, 226 S. W. 236; 242; Woolsey v. Wells, 281 S. W. 695, 700.] It is apparent that, as a matter of law, the evidence of plaintiff herein did not establish the gist of his cause of action as to any of the defendants.

Under all the evidence before us, we conclude that the demurrers of the respective defendants herein offered at the close of all the evidence should have been sustained.

Defendants further object to the plaintiff's instructions in the case, and to the admission of the affidavits described, but inasmuch as the case must be reversed for the reasons hereinbefore stated, it will not be necessary to consider those points.

The judgment of the Circuit Court is reversed. All concur.