THE STATE EX REL. BEN M. ANDERSON v. EMIL ROEHRIG, Judge of Eleventh Judicial Circuit, and W. C. IRWIN.—8 S. W. (2d) 998.

Court en Banc, July 30, 1928.

*Fry & Hollingsworth* for relator.

872

*Irwin & Bushman* for respondents.

RAGLAND, J.—Prohibition. Following the filing of a return by respondent, Judge of the Circuit Court of Audrain County, to the provisional rule issued herein, relator moved for judgment on the pleadings. The facts set forth in the return are therefore to be taken as true. Many of them, however, have no bearing on the questions at issue between the parties in this proceeding and will therefore be ignored. The relevant facts are briefly these:

In the latter part of 1919 or the early part of 1920, relator, Ben M. Anderson, was claiming title to approximately 400 acres of accreted land lying along the Missouri River in Boone County. One Sutton also claimed title to the land and was in possession. In this situation relator commenced two suits against Sutton: seeking by one to have the question of title adjudged in his favor; and by the other to recover possession of the land, together with rents and profits. Both were instituted in the Circuit Court of Boone County; the first culminated in a final judgment in relator's favor in 1922; the second, after two trials in the Circuit Court of Boone County followed by appeals to this court, was transferred on change of venue to the Circuit Court of Audrain County. On a trial in that court relator obtained a judgment which was subsequently affirmed by this court on Sutton's appeal.

Both suits were instituted and prosecuted to final judgment by W. C. Irwin of the Cole County Bar, as attorney for relator. Messrs. Rogers and Buffington of the Audrain County Bar were employed as local counsel to assist Irwin in the last trial of the ejectment suit.

The mandate of the court affirming the judgment in the ejectment suit was filed in the Circuit Court of Audrain County on the 8th day of April, 1927. Thereafter, on April 14, 1927, and during its regular March term, 1927, Sutton paid into that court the sum of $28,400, being the amount of the rents and profits which had been adjudged against him in the ejectment suit, with the accrued interest thereon. At the time of paying the money into court Sutton informed the court that relator's attorneys had not released their respective liens thereon. Thereupon the court made an order which provided, among other things, "that the clerk hold said sum of $28,400 until all the attorneys for Ben M. Anderson in the case of Anderson v. Sutton for rents and profits were paid and had satisfied said judgment, interest and costs." Following the making of the order Irwin filed a motion in which he asked the court to ascertain and determine the amount of the fee due him for his services and to declare in his favor a lien to the extent thereof upon the moneys paid into court in satisfaction of the judgment for rents and profits in the ejectment suit. In the motion he further set forth that his services in both cases had been rendered pursuant to a single contract of employment; that according to the terms of such contract relator had agreed to pay him "a contingent fee based upon a reasonable and customary percentage of the amount recovered;" that the money and property recovered in the ejectment suit were of the aggregate value of $71,300; and that on a contingent basis one-third thereof was a reasonable fee for his services.

Appearing for that purpose only, relator moved to strike Irwin's motion from the files, on the ground, among others, that the court was without jurisdiction to hear and determine the matters and things referred to therein. Relator's motion was by the court overruled, and he thereupon applied to this court for a writ of prohibition. Respondent judge in his return avers "that, unless enjoined and restrained from so doing, he will in due time proceed to hear and determine the questions presented by the petition of the said Irwin as to the amount, if any, of the lien which the said Irwin has against the funds so impounded," etc.

As entitling him to the writ applied for, relator says:

"The respondent judge is without jurisdiction to determine the matters in controversy between relator and Irwin as presented under Irwin's motion, for the following reasons:

"(1) Such a proceeding would deprive relator of his right to a trial of the issues here involved by a jury, to-wit: an action upon an alleged contract, express or implied; and (2) such proceeding is summary in its nature; a total departure from the established and recognized methods of procedure for the enforcement of alleged civil rights; and a deprivation of the property of relator without due process of law contrary to Section 30, Article II, of Constitution of Missouri."

This presents the questions for consideration.

I.  Section 690, Revised Statutes 1919, provides:

"The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law.  From the commencement of an action or the services of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

The statute in giving an attorney a lien on his client's cause of action creates a right that did not exist at common law, but though creating a new right it fails to provide a remedy.  Under such circumstances, that the right may not perish for the want of a remedy, the courts have been assiduous in devising for its enforcement modes of procedure conformable to "those general rules established in our system of jurisprudence for the security of private rights." [Gillham v. Railway Co., 282 Mo. 118-127, 221 S. W. 1.]  In determining in a given case the appropriate method of enforcement, the nature of the right as well as the particular facts must be considered.  What then is the lien created by the statute?

"The attorney's lien, whether under the statute or at common law, is equitable in its nature.  Even the decisions in this country, which confine its existence and application to the narrowest limits, always speak of it as an equitable lien, right or privilege.  It is not property in the thing, which gives a right of action at law.  It is a charge upon the thing, which is protected in equity.  Courts of law may recognize it when the res is in possession of the lienor, and the owner is seeking to deprive him of such possession.  But where the thing is not in possession, and some affirmative action is required by the attorney, he, like other lien claimants, must seek relief in equity.  In some instances, a formal suit should be instituted; in others an application to the court rendering the judgment, for the proper order, would be sufficient.  . . .

"If plaintiffs (attorneys) intruded themselves into the cases without employment, and their voluntary services were objected to and repudiated, or if they have been paid all those services are reasonably worth, 'the statute gives them no lien. But, since a court of equity is the only forum that can enforce by proper decree the lien rights, we are of opinion that this is one of the cases wherein such court may take and retain jurisdiction for all purposes. Having assumed jurisdiction to enforce the lien, it would be encouraging a multiplicity of suits, and in this as in other respects, contrary to established procedure in equity, to say that the court of equity shall not determine the incidental, though material, legal questions involved." [Fillmore v. Wells, 10 Colo. 228, 236-237.],

That Irwin, under the facts disclosed by the record, could have enforced his lien by an original suit in equity is, we think, beyond question. [Fischer-Hansen v. Railroad, 173 N. Y. 492, 1. c. 502.] And if so, the procedure that the respondent says that he will follow, if left unrestrained, will not deprive relator of any constitutional right to have the issues tried to a jury.

II. Will the summary procedure resorted to, in lieu of a suit in equity, violate due process of law requirements? It is relator's contention that the suit of Anderson v. Sutton, in which Irwin filed his motion, had prior to the time of such filing come to an end and was no longer pending, and that permitting the engrafting thereon of a controversy between himself and Irwin is contrary to established rules of procedure and wholly without precedent. But the suit of Anderson v. Sutton had not terminated for all purposes; the judgment had not been satisfied. Anderson the plaintiff owned the judgment, but Irwin, his attorney, had a lien on it to secure the fee for his services. A controversy existed between them as to the amount of the fee. Sutton was entitled upon payment of the judgment to have satisfaction thereof entered of record (Secs. 1572 and 1574, R. S. 1919); but he could not safely pay either. He therefore brought the money into court to be paid over on the order of the court when satisfaction of the judgment was properly acknowledged by the parties entitled to the proceeds thereof. Anderson, relator here, was in court for the purpose of acknowledging satisfaction of the judgment. [Sec. 1572, supra.] His attorney of record was also there asking the court to determine the amount of compensation due him for services rendered in the suit and to impress the proceeds of the judgment with a lien therefor. And that the court expressed an intention of doing.

The authority of a court of general jurisdiction, in such circumstances, to fix an attorney's fee and make the necessary orders to enforce its payment is incident, it seems, to the control it has over

**876**

its own judgment and records. [Goodrich v. McDonald, 112 N. Y. 157, 164.] That the court may exercise such authority in a summary manner is well established. In Young v. Renshaw, 102 Mo. App. 173, the St. Louis Court of Appeals, after reviewing the authorities at length, said:

"From these authorities we conclude that the remedy afforded by the common law to the attorney for the enforcement of his lien on a judgment, which he has obtained for his client, is, if the judgment is paid in disregard of his rights, to move the court to set aside the satisfaction *pro tanto* and to award execution to the extent of his lien, as was done in this case; that where the judgment or its proceeds are yet under the control of the court, it is the duty of the court, on motion of the attorney, to control the judgment or its proceeds until he has paid his fee."

Relator is therefore mistaken when he asserts that the contemplated proceeding in the Circuit Court of Audrain County is contrary to established rules of procedure and without precedent. Not only is the procedure in question in conformity with a practice of long standing in common-law courts, but it is clear that relator will not be thereby deprived of any essential right. He has had due notice of the proceeding, and he is just as fully advised as to the nature of his attorney's claim, and for aught that appears will be accorded just as fully the right of defending against it, as though the proceeding had been commenced by the filing of a bill in equity instead of an informal pleading.

The method of enforcing an attorney's lien adopted by the circuit court may be regarded as being in all essential respects a proceeding in equity to enforce an equitable lien; it likewise conforms to the common-law remedy. But whether it be regarded as the one or the other, it will not operate to deprive relator of any constitutional right.

As it does not appear that the circuit court is proceeding, or is about to proceed, in excess of its jurisdiction, our provisional rule should be discharged and this proceeding dismissed. It is so ordered. All concur, except *Gentry* and *Gantt, JJ.,* not sitting.